IN THE

# United States Court of Appeals
# for the Federal Circuit

LINYI CHENGEN IMPORT AND EXPORT CO., LTD., CELTIC CO., LTD., JIAXING GSUN IMPORT & EXPORT CO., LTD., SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD., ANHUI HODA WOOD CO., LTD., SHANGHAI FUTUWOOD TRADING CO., LTD., LINYI EVERGREEN WOOD CO., LTD., XUZHOU JIANGYANG WOOD INDUSTRIES CO., LTD., XUZHOU TIMBER INTERNATIONAL TRADE CO. LTD., LINYI SANFORTUNE WOOD CO., LTD., LINYI MINGZHU WOOD CO., LTD.,

*Plaintiffs – Appellees*
*(Case caption continued on next page)*

Appeals from the United States Court of International Trade in Nos. 1:18-cv-00002-JCG, 1:18-cv-00011-JCG, 1:18-cv-00017-JCG, 1:18-cv-00018-JCG, 1:18-cv-00019-JCG, Judge Jennifer Choe-Groves

**RESPONSE BRIEF OF**
**ZHEJIANG DEHUA TB IMPORT & EXPORT CO., LTD**

JEFFREY S. NEELEY
STEPHEN W. BROPHY
HUSCH BLACKWELL LLP
1801 Pennsylvania Ave. NW
Suite 1000
Washington, DC 20006
(202) 378-2300
jeffrey.neeley@huschblackwell.com

*Counsel to Zhejiang Dehua TB Import and Export Co., Ltd.*

XUZHOU ANDEFU WOOD CO., LTD., SUINING PENGXIANG WOOD CO., LTD., XUZHOU SHENGPING IMPORT AND EXPORT CO., LTD., XUZHOU PINLIN INTERNATIONAL TRADE CO. LTD., LINYI GLARY PLYWOOD CO., LTD., LINYI LINHAI WOOD CO., LTD., HENGSHENG WOOD INDUSTRY CO., LTD., SHANDONG QISHAN INTERNATIONAL TRADING CO., LTD., SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD., LINYI HUASHENG YONGBIN WOOD CO., LTD., QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD., LINYI JIAHE WOOD INDUSTRY CO., LTD., JIAXING HENGTONG WOOD CO., LTD., XUZHOU LONGYUAN WOOD INDUSTRY CO., LTD., FAR EAST AMERICAN, INC., ZHEJIANG DEHUA TB IMPORT & EXPORT CO., LTD., TARACA PACIFIC, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS, LLC,

*Plaintiffs – Appellees*

HIGHLAND INDUSTRIES INC., JIASHAN DALIN WOOD INDUSTRY CO., LTD., HAPPY WOOD INDUSTRIAL GROUP CO., LTD., JIANGSU HIGH HOPE ARSER CO., LTD., SUQIAN YAORUN TRADE CO., LTD., YANGZHOU HANOV INTERNATIONAL CO., LTD., G.D. ENTERPRISE LTD., PIZHOU JIN SHENG YUAN INTERNATIONAL TRADE CO., LTD., XUZHOU SHUIWANGXING TRADING CO., LTD., COSCO STAR INTERNATIONAL CO., LTD., DEQING CHINA-AFRICA FOREIGN TRADE PORT CO., LTD., LINYI CITY DONGFANG JINXIN ECONOMIC & TRADE CO., LTD., FABUWOOD CABINETRY CORP., LINYI CITY SHENRUI INTERNATIONAL TRADE CO., LTD., JIANGSU QIANJIUREN INTERNATIONAL TRADING CO., LTD., QINGDAO TOP P&Q INTERNATIONAL CORP., CANUSA WOOD PRODUCTS LTD., HOLLAND SOUTHWEST INTERNATIONAL INC., LIBERTY WOODS INTERNATIONAL, INC., NORTHWEST HARDWOODS, INC., USPLY LLC, SHANDONG DONGFANG BAYLEY WOOD CO., LTD., CONCANNON CORP.,

*Plaintiffs*

v.

UNITED STATES, COALITION FOR FAIR TRADE OF HARDWOOD PLYWOOD,

*Defendants – Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 24-1258, 24-1259 |
| **Short Case Caption** | Linyi Chengen Import and Export Co., Ltd. v. US |
| **Filing Party/Entity** | Zhejiang Dehua TB Import & Export Co., Ltd. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/17/2024

Signature: /s/Jeffrey S. Neeley

Name: Jeffrey S. Neeley

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Zhejiang Dehua TB Import & Export Co., Ltd. | | Dehua TB New Decoration Material Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Nithya Nagarajan, Partner, | Husch Blackwell | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASES ....................................................................1

SUMMARY OF ARGUMENT..............................................................................1

ARGUMENT .......................................................................................................5

I.  The Trade Court Properly Remanded the Calculation of Linyi Chengen's Margin and Properly Upheld Commerce Calculation of a Zero Margin for Linyi Chengen in its Second Remand Results ...............................................5

II. The Trade Court Properly Remanded Commerce's Calculation of the Separate Rate of 57.36 percent and Properly Upheld Commerce's Application of a Zero Percent Margin for Separate Rate Respondents .........5

   A.  Federal Circuit Precedent Supports the Trade Court's Decision .........6

   B.  Appellants' Challenge to the Applicability of this Precedent Fails ....11

   C.  Substantial Evidence Did Not Support the 57.36% Separate Rate Calculated by Commerce ..................................................................13

      1.  The PRC-Wide Rate is Not Representative of Separate Rate Respondents ................................................................................. 14

      2.  Price Quotes and Invoices from One Exporter Do Not Support Commerce's Calculation of a 57.36 Percent Separate Rate for All Separate Rate Respondents ....................................................... 15

      3.  Individual Invoices from the Separate Rate Applications Do Not Support Commerce's Application of a 57.36 Percent Separate Rate......................................................................................... 18

      4.  Alleged Difference in Selling Practices Does Not Support Commerce's Application of the 57.36 Percent Rate ..................... 20

      5.  Conclusion................................................................................. 21

III. Commerce's Exclusion of Certain Separate Rate Companies from the Order Should be Affirmed .............................................................................22

IV.    Joinder..........................................................................................................24

CONCLUSION ...............................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albemarle Corp. & Subsidiaries v. United States*,
  821 F.3d 1345 (Fed. Cir. 2016)............................................................ 6, 9, 10, 13

*Bosun Tools Co. v. United States*,
  No. 2021-1930, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022).................................11

*Changzhou Hawd Flooring Co. v. United States*,
  848 F.3d 1006 (Fed. Cir. 2017)......................................................... 9, 10

*Changzhou Hawd Flooring Co. v. United States*,
  947 F.3d 781 (Fed. Cir. 2020)......................................................... 22, 23

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*,
  701 F.3d 1367 (Fed. Cir. 2012)............................................................ 6, 9, 10, 15

*F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*,
  216 F.3d 1027 (Fed. Cir. 2000)......................................................... 8, 15

*Linyi Chengen Imp. & Exp. Co. v. United States*,
  487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) .........................................................2

*Linyi Chengen Imp. & Exp. Co. v. United States*,
  539 F. Supp. 3d 1269 (Ct. Int'l Trade 2021) .........................................................2

*Linyi Chengen Imp. & Exp. Co. v. United States*,
  609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) .................................2, 11, 12, 18, 22

*Linyi Chengen Imp. & Exp. Co. v. United States*,
  658 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ............................................. 2, 4, 22

*Mueller Comercial De Mexico, S. de R.L. De C.V. v. United States*,
  753 F.3d 1227 (Fed. Cir. 2014)...............................................................6

*Rhone Poulenc, Inc. v. United States*,
  899 F.2d 1185 (Fed. Cir. 1990)......................................................... 7, 21

*Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,*
    268 F.3d 1376 (Fed. Cir. 2001)........................................................................ 9, 15

*Thai Pineapple Canning Indus. Corp. v. United States*,
    273 F.3d 1077 (Fed. Cir. 2001)..........................................................................7

*United States v. Eurodif S.A.*,
    555 U.S. 305, 129 S. Ct. 878, 172 L. Ed. 2d 679 (2009) ......................................7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    35 C.I.T. 948, 783 F. Supp. 2d 1343 (2011) .................................................. 12, 22

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
    716 F.3d 1370 (Fed. Cir. 2013)............... 3, 4, 6, 7, 8, 9, 10, 12, 13, 15, 19, 21, 22

## **Statutes**

19 U.S.C. § 1677e(d)(3)........................................................................................12

## **Regulations**

*Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam*,
    86 Fed. Reg. 28,559 (Dep't Commerce May 27, 2021)......................................23

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of this Court, counsel for

Plaintiff-Appellee Zhejiang Dehua TB Import & Export Co., Ltd. ("Zhejiang

Dehua"), states that counsel is not aware of any other appeal in or from the same

civil action that has previously been before this or any other appellate court.

Counsel for Zhejiang Dehua is also unaware of any other case pending in this or

any other court or agency that will directly affect or be directly affected by this

court's decision in the pending appeal.

## SUMMARY OF ARGUMENT

In the underlying investigation, the U.S. Department of Commerce

("Commerce") selected two mandatory respondents, Linyi Chengen Import and

Export Co., Ltd. ("Chengen") and Shandong Dongfang Bayley Wood Co., Ltd.

("Bayley").   Appx6856, Appx6871.  In its original final determination, Commerce

calculated a margin of 183.36 percent for Chengen based on all of its sales to the

United States and a normal value that was based on the company's actual factors of

production.  Appx8952.  With respect to Bayley, Commerce determined that its

responses were deficient and applied adverse inferences to determine that the

company had failed to rebut the presumption of government control and was

subject to the China-wide rate.  Appx8951.  Commerce also calculated a separate

rate for 81 companies that had demonstrated their independence from government

control.  Appx6871-6873.  In the original final determination, this margin was based on the rate assigned to Chengen.  Appx8951-8952.

After appeal and remand, Commerce calculated a margin of zero percent for Chengen, a decision which the U.S. Court of International Trade affirmed as supported by substantial evidence and a determination that the Appellants now challenge. *Linyi Chengen Imp. & Exp. Co. v. United States*, 487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020).  After calculating a zero percent margin for Chengen, Commerce initially calculated a margin of 57.36 percent for separate rate respondents, which was based on an average of the zero percent rate assigned to Chengen and the 114.72 percent China-wide rate.  Appx382.  The Trade Court remanded this decision to Commerce three more times because Commerce failed to cite to substantial evidence on the record that the 57.36 percent rate had any relationship to the actual dumping margins of separate rate respondents. *Linyi Chengen Imp. & Exp. Co. v. United States*, 487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020); *Linyi Chengen Imp. & Exp. Co. v. United States*, 539 F. Supp. 3d 1269 (Ct. Int'l Trade 2021); *Linyi Chengen Imp. & Exp. Co. v. United States*, 609 F. Supp. 3d 1392, 1403 (Ct. Int'l Trade 2022).   Ultimately, Commerce assigned separate rate respondents' a margin of zero percent, a decision which was affirmed by the Trade Court. *Linyi Chengen Imp. & Exp. Co. v. United States*, 658 F. Supp. 3d 1347, 1364 (Ct. Int'l Trade 2023).

The Trade Court's decision was in accordance with this Court's precedent. For example, this Court addressed the same factual scenario in *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed. Cir. 2013) ("*Yangzhou Bestpak*"). In that case, one of the two mandatory respondents was assigned a *de minimis* margin, while the other was assigned the China-wide rate. Commerce likewise initially assigned separate rate respondents an average of the two rates, stating that this was a reasonable method. On appeal, the Federal Circuit held that this methodology was unreasonable as applied since it did not reflect economic reality and had no relationship to the separate rate respondents' actual dumping margin. The same is true based on the facts of this case.

As argued below, the Trade Court reasonably rejected Commerce's attempts to back-fill and cherry-pick the record to find a justification for its decision to assign separate rate respondents a margin other than zero percent. Ultimately, Commerce could not find any substantial evidence on the record to justify the 57.36 percent rate. Commerce could not show that the 57.36 percent margin was reflective of economic reality or reflective of the separate rate respondents' actual dumping experiences. Absent any such substantial evidence, it was unreasonable for Commerce to assign cooperative separate rate respondents that demonstrated their independence from government control a margin that was half of the PRC-wide rate assigned to an uncooperative respondent that did not demonstrate their

independence from government control.   Nor did the Trade Court mandate any outcome in this case.  It simply remanded the issue to Commerce and Commerce determined that there was "no other information on the record than the sole calculated margin of zero that we could reasonably apply as the margin for the Separate Rate Plaintiffs." Appx562-563.

As the Trade Court noted, the courts have previously warned Commerce that selecting only two mandatory respondents will inevitably lead to situations such as this.  *Linyi Chengen*, 658 F. Supp. 3d at 1360  *citing Yangzhou Bestpak,* 716 F.3d at 1378 .  Had Commerce selected even one more mandatory respondent or requested additional information from separate rate respondents, it likely would have had additional data with which to determine a reasonable margin for separate rate respondents.  The fact that the data on the record is not more robust is the result of Commerce's own failures and cannot be held against separate rate respondents. For all of the reasons argued below, the Court should affirm the Trade Court's decision.

## ARGUMENT

**I.** **The Trade Court Properly Remanded the Calculation of Linyi Chengen's Margin and Properly Upheld Commerce Calculation of a Zero Margin for Linyi Chengen in its Second Remand Results**

Zhejiang Dehua hereby joins in and incorporates by reference the arguments presented in the Response Brief of Plaintiff-Appellee Linyi Chengen Import and Export Co., Ltd., which was filed with the U.S. Court of Appeals for the Federal Circuit on this date.

**II.** **The Trade Court Properly Remanded Commerce's Calculation of the Separate Rate of 57.36 percent and Properly Upheld Commerce's Application of a Zero Percent Margin for Separate Rate Respondents**

If the Court does not choose to reinstate the Linyi Chengen's margin from the original final determination and the corresponding 183.36 percent separate rate, Appellants argue that the Court should reinstate the agency's redetermination of the separate rate in the agency's second to fourth remand results. Opening Brief of Defendant-Appellant United States ("United States Brief") at 55 and Opening Brief of Defendant-Appellant Coalition for Fair Trade in Hardwood Plywood ("Coalition Brief") at 28. That separate rate was calculated using Chengen's zero percent margin and the 114.72 percent margin assigned to the PRC-wide entity, which included Bayley. As explained below, this methodology was unreasonable as held by the Trade Court. The Trade Court repeatedly remanded the issue to the

agency in order to give them the opportunity to provide a reasonable explanation for their methodology, but Commerce was never able to do so.

### A. Federal Circuit Precedent Supports the Trade Court's Decision

This Court has emphasized that in determining the separate rate, "accuracy and fairness must be Commerce's primary objectives in calculating a separate rate for cooperating exporters." *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1354 (Fed. Cir. 2016); *see also Mueller Comercial De Mexico, S. de R.L. De C.V. v. United States,* 753 F.3d 1227, 1235 (Fed. Cir. 2014) ("Commerce must have as its primary objective the calculation of an accurate rate."). "[R]ate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins." *Yangzhou Bestpak,* 716 F.3d at 1380. Further, the requirement in the statute that the method used to calculate the separate rate "be 'reasonable' imposes a duty on Commerce to select a method appropriate for the circumstances." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1379 (Fed. Cir. 2012).

The facts of this case are virtually identical to those that this Court faced in *Yangzhou Bestpack*. In that case, one of the two mandatory respondents was assigned a *de minimis* margin, while the other was assigned the China-wide rate. Commerce likewise initially assigned separate rate respondents an average of the

two rates, stating that this was a reasonable method. On appeal, the Federal Circuit held that this methodology was unreasonable as applied since it did not reflect economic reality and had no relationship to the separate rate respondents' actual dumping margin. The same is true based on the facts of this case.

While this Court held that Commerce is theoretically allowed to average a *de minimis* rate and an adverse facts available rate to determine the margin for Separate Rate Respondents, it also held this methodology to be unreasonable in practice given that it was not reflective of economic reality:

> Nevertheless, "[w]hile various methodologies are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case." *Thai Pineapple Canning Indus. Corp. v. United States*, 273 F.3d 1077, 1085 (Fed. Cir. 2001). "[F]orm should be disregarded for substance and the emphasis should be on economic reality." *United States v. Eurodif S.A.*, 555 U.S. 305, 317-18, 129 S. Ct. 878, 172 L. Ed. 2d 679 (2009). This court finds that this case presents that situation. Although Commerce may be permitted to use a simple average methodology to calculate the separate rate, the circumstances of this case renders a simple average of a de minimis and AFA China wide rate unreasonable as applied. Similarly, a review of the administrative record reveals a lack of substantial evidence showing that such a determination reflects economic reality.

*Yangzhou Bestpak,* 716 F.3d at 1378. As this Court explained, "[a]n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible" and the rate determination for non-mandatory, cooperative respondents must "bear some relationship to the actual dumping margins." *Id*. at 1379-1380 *citing Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). This Court also noted that it was

unreasonable to assign a cooperative respondent a rate that was half of the PRC-wide rate when the respondent had demonstrated that it was independent of government control and that such a result may amount to being punitive, which is not permitted by the statute:

> It is worth noting that similar to Yama, Bestpak successfully proved that it was independent of government control. However, Commerce ultimately assigned Bestpak a margin that was exactly half of the China-wide rate—a rate for those presumed to be under foreign government control. Assigning a non-mandatory, separate rate respondent a margin equal to over 120% of the only fully investigated respondent with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute.

*Yangzhou Bestpak,* 716 F.3d at 1379 *citing F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("[T]he purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins.").

In other cases, this Court has likewise found the use of an adverse facts available rate in the average rate assigned to Separate Rate Respondents to be unreasonable as applied. In *Changzhou Wujin,* the Federal Circuit explained that the methodology at issue undercuts the goal of promoting cooperation:

> …applying an adverse rate to cooperating respondents undercuts the cooperation-promoting goal of the AFA statute. Commerce misses the point when it argues that the appellant cannot complain because it does not bear an AFA rate directly, but only a separate rate derived from the AFA rate, which is only half as adverse. Although the hypothetical AFA rate was not directly applied to a cooperating respondent, cooperating respondents were the only entities impacted by the recalculated rate.

*Changzhou Wujin*, 701 F.3d at 1378; *see also Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,* 268 F.3d 1376, 1382 (Fed. Cir. 2001) (The mere presence of non-cooperating parties "fails to justify [Commerce's] choice of dumping margin for the cooperative uninvestigated respondents."). As the Court explained,

> …the fact that the AFA rate applies to other companies is not evidence of dumping on the part of the separate rate companies." [citation omitted]. Commerce cannot use the AFA rate in calculating the separate rate for cooperating parties without explanation.

*Id.* Furthermore, Commerce must "examine the record and articulate a satisfactory explanation *Yangzhou Bestpack,* 716 F.3d at 1378.

In addition, in *Albemarle* and *Changzhou Hawd*, this Court also held that it is not the separate rate applicant's burden to establish that they are like the de minimis AD rate exporter. *Albemarle*, 821 F.3d at 1353 and *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017). Rather, this Court placed the burden squarely on Commerce to find that the separate rate applicants are not like the exporter or exporters for which an individual AD margin was calculated. This Court held that "the burden is not on the separate respondents to show that their dumping is the same as that of the individually examined respondents. Rather, Commerce must find based on substantial evidence that there

is a reasonable basis for concluding that the separate respondents' dumping is different." *Albemarle*, 821 F.3d at 1353.

Moreover, in various cases, the courts have found that the rationale's offered by Commerce to avoid assigning separate rate respondents the same zero or de minimis margin calculated for a mandatory respondent was not reasonable. In *Yangzhou Bestpak,* this Court rejected Commerce's reliance on a comparison of the average unit values (AUVs) reported in the Quantity and Value Questionnaires. *Yangzhou Bestpak,* 716 F.3d at 1370. In *Albemarle*, this Court rejected Commerce's reliance on margins from a prior review. *Albemarle*, 821 F.3d at 1353. In *Changzhou Hawd*, this Court rejected Commerce's reliance on margins from a subsequent review. *Changzhou Hawd*, 848 F.3d at 1012. In *Changzhou Wujin*, this Court rejected Commerce's reliance on a hypothetical adverse facts available rate based on one respondent's verified normal value data and an unverified U.S. price obtained from a non-cooperating respondent. *Changzhou Wujin,* 701 F.3d at 1379. The Trade Court properly applied this precedent and determined that Commerce attempt to assign separate rate respondents a margin that was partially based on the China-wide rate was not supported by substantial evidence or otherwise in accordance with law.

**B.     Appellants' Challenge to the Applicability of this Precedent Fails**

Appellant, the Coalition for Fair Trade in Hardwood Plywood ("the Coalition"), claims that averaging a zero percent rate and a China-wide rate based on adverse facts available is permitted pursuant to this Court's decision in *Bosun Tools Co. v. United States*, No. 2021-1930, 2022 WL 94172, at * 6 (Fed. Cir. Jan. 10, 2022). Coalition Brief at 33. However, this argument fails because *Bosun Tools* involved different facts and the Trade Court reasonably distinguished this decision. This case involves the same type of sparse record as this Court faced in *Yangzhou Bestpak*. There was no such lack of data in *Bosun Tools* as explained by the Trade Court. *Linyi Chengen,* 609 F. Supp. 3d at 1403.

Specifically, *Bosun Tools* involved the seventh administrative review of the antidumping order on Diamond Sawblades and Parts Thereof from the People's Republic of China. As a result of its extensive experience with the order, Commerce had data from the investigation and the seven subsequent reviews in order to determine that the separate rate was reasonable and reflective of historical dumping rates. *Bosun Tools Co. v. United States,* 2022 WL 94172, at *6. By contrast, this case, like *Yangzhou Bestpak,* involves an investigation and a record that was so thin that Commerce could not find reasonable evidence to support its determination.

As the Trade Court noted, the sparse record in this case was created by Commerce itself.  As the Trade Court noted, Commerce created its own problem when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions regarding the potential dumping margins of the separate rate respondents.  *Linyi Chengen,* 609 F. Supp. 3d at 1403. Commerce also had the option to collect more information from separate rate respondents in order to support a separate rate but again declined to do so.  These are the same problems identified by this Court in prior cases. *Yangzhou Bestpak,* 716 F.3d at 1370  (*citing Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 35 C.I.T. 948, 955 n.4, 783 F. Supp. 2d 1343 (2011) ("Commerce put itself in a precarious situation when it selected only two mandatory respondents.")

In addition, the Coalition claims that, since *Yangzhou Bestpak*, Congress amended the statutory provision for adverse inferences to clarify that Commerce is under no obligation to ensure—"for any [] purpose"—that the adverse rate reflects "commercial reality" or the rate that would have been calculated in the absence of the adverse inference.  19 U.S.C. § 1677e(d)(3).  Coalition Brief at 35.  This fact is irrelevant.  The statute was amended to allow Commerce to determine an adverse facts available rate for non-cooperative respondents regardless of whether it reflects "commercial reality".  The amended statute does not say anything about

whether Commerce can use that adverse facts available rate in the calculation of the separate rate assigned to cooperative respondents.

## C. Substantial Evidence Did Not Support the 57.36% Separate Rate Calculated by Commerce

The Trade Court did not substitute its judgment for that of Commerce nor did it improperly reweigh the evidence as Appellant United States claims. As discussed above, this Court has held that a simple average of a de minimis and adverse facts available China-wide rate may be unreasonable as applied. *Yangzhou Bestpak,* 716 F.3d at 1378. Moreover, this Court held that "the burden is not on the separate respondents to show that their dumping is the same as that of the individually examined respondents. Rather, Commerce must find based on substantial evidence that there is a reasonable basis for concluding that the separate respondents' dumping is different." *Albemarle,* 821 F.3d at 1353. In this case, the Trade Court reasonably held that Commerce's rationale for applying the 57.36 percent rate was not supported by substantial evidence. None of the rationales offered by Commerce to the Trade Court or to this Court, either singly or in combination, reasonably supported its finding that the 57.36 percent rate was reasonable to assign cooperative separate rate respondents.

### 1. The PRC-Wide Rate is Not Representative of Separate Rate Respondents

The Coalition claims that the mandatory respondents in an investigation are collectively presumed representative of companies not selected for individual examination, such that their averaged margins produce a facially reasonable rate for those companies. Coalition Brief at 31, *citing* Appx421-422. This argument is contradicted by the many cases cited above and would effectively negate this Court's prior determinations finding that the use of the China-wide rate in the calculation of the rate for separate rate respondents was unreasonable. Using the Coalition's rationale, the existence of a mandatory respondent assigned the China-wide rate could always be used to justify the use of the China-wide rate in calculation of the separate rate without further analysis as to the reasonableness of this methodology as applied.

This argument also ignores the fact that the separate rate respondents, unlike Bayley, were fully cooperative throughout the proceeding and demonstrated their independence from government control. As this Court has held, Commerce's original methodology would undercut the goal of promoting cooperation and would be unreasonable in practice:

> It is worth noting that similar to Yama, Bestpak successfully proved that it was independent of government control. However, Commerce ultimately assigned Bestpak a margin that was exactly half of the China-wide rate—a rate for those presumed to be under foreign government control. Assigning a non-mandatory, separate rate respondent a margin equal to over 120% of the

only fully investigated respondent with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute.

*Yangzhou Bestpak,* 716 F.3d at 1379 *citing F.lli De Cecco di Filippo Fara S.*

*Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("[T]he

purpose of section 1677e(b) is to provide respondents with an incentive to

cooperate, not to impose punitive, aberrational, or uncorroborated margins.").

> [A]pplying an adverse rate to cooperating respondents undercuts the cooperation-promoting goal of the AFA statute. Commerce misses the point when it argues that the appellant cannot complain because it does not bear an AFA rate directly, but only a separate rate derived from the AFA rate, which is only half as adverse. Although the hypothetical AFA rate was not directly applied to a cooperating respondent, cooperating respondents were the only entities impacted by the recalculated rate.

*Changzhou Wujin,* 701 F.3d at 1378; *see also Shakeproof Assembly Components, ,*

268 F.3d at, 1382 (The mere presence of non-cooperating parties "fails to justify

[Commerce's] choice of dumping margin for the cooperative uninvestigated

respondents.").


### 2. Price Quotes and Invoices from One Exporter Do Not Support Commerce's Calculation of a 57.36 Percent Separate Rate for All Separate Rate Respondents

Appellants also claim that the separate rate of 57.36 percent was reasonable

because it was supported by price quotes from one Chinese exporter that

subsequently filed an SRA and was granted a separate rate.  United States Brief at

57 and Coalition Brief at 31.  That Separate Rate Application contained one

commercial invoice from that one company.  Appx446.  Appellants claim that this information supported a finding that separate rate respondents were dumping and that their margin would be different from Chengen's margin.  United States Brief at 57 and Coalition Brief at 31.

Appellants' rational ignores the fact that the petition rates were calculated from only two price quotes from one company and have not even been shown to be representative of that company's overall sales to the United States during the period of invetigation.  Appx446, Appx931.  Moreover, the company's Separate Rate Application contained one invoice, which merely reflected its first sale of subject merchandise to the United States during the period of investigation.  *Id*. and Appx2163.  While Commerce collected information on all of Chengen's sales to the United States, as well as its factors or production in order to calculate the normal value, no such information was collected from any separate rate respondent.  Moreover, the invoice provided in the Separate Rate Application was provided in response to Commerce's request for the invoice from each separate rate respondents' first sale to the United States, for the sole purpose of demonstrating that the company had a sale during the period of investigation.  *See e.g.* Appx2163.  Commerce did not ask for more or ever intend to use one sale to calculate a dumping margin, since such an approach would be contrary to law.  Based on such limited information, it is impossible to determine whether a

company was dumping during the period of investigation, let alone support the use of a high margin that is partially based on the China-wide rate.

Moreover, the claim that the price quotes in the petition or an invoice price for this one company indicate dumping is not supported by the record. First, in order to determine whether the company was dumping, Commerce would need that company's actual factors or production in order to determine the normal value, information which was never requested by Commerce. Second, the dumping calculation in the petition was made using Thailand as the surrogate country to value the factors of production. Appx932. But in its calculation in the investigation, Commerce rejected Thailand as an appropriate surrogate country to calculate normal value and selected Romania as the surrogate country during the investigation. Appx8546.

Finally, even assuming that such price quotes indicate dumping by that one company, that fact cannot reasonably serve as a basis to conclude that all of the many separate rate companies were dumping. As the Coalition itself notes, there were approximately 80 separate rate respondents in the underlying investigation. Coalition Brief at 29.

As the Trade Court reasonably held,

… Commerce failed to review other potentially contradictory evidence on the record, including for example, record evidence showing that Separate Rate Plaintiff Jiangyang Wood had a higher weighted average sales price than Linyi Chengen, whose rate was determined to be 0%. [citation omitted].

The Separate Rate Plaintiffs also cite additional contrary record evidence, such as Bayley's full U.S. sales database, [citation omitted]; the Separate Rate Applications containing commercial invoices of over 100 companies who were determined by Commerce to be separate from the China-wide entity, [citation omitted]; and invoices from 40 Separate Rate Plaintiffs showing a variety of prices, some that were higher than Linyi Chengen's price [citation omitted]. The Court does not purport to reweigh the evidence, but emphasizes these examples to illustrate that Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination, while ignoring potentially contrary evidence on the record.

*Linyi Chengen, 6*09 F. Supp. 3d at 1404. Commerce is plainly cherry-picking the record in order to find any basis, no matter how strained, to assign separate rate respondents a rate other than zero and ignoring any record evidence that detracts from its pre-conceived decision.

### 3. Individual Invoices from the Separate Rate Applications Do Not Support Commerce's Application of a 57.36 Percent Separate Rate

Appellants also defend Commerce's calculation of the 57.36 percent rate based on its review of the one commercial invoice contained in each of the Separate Rate Applications filed by separate rate respondents. United States Brief at 58 and Coalition Brief at 32. As noted above, these invoices only represent each company's first sale of subject merchandise to the United States during the period of investigation, which were submitted solely for the purpose of demonstrating that they had a sale of subject merchandise during the period and were, therefore, eligible to receive a separate rate. That is all that Commerce requested. *See e.g.*

Appx2163.  Commerce did not request comprehensive information on all of the

separate rate respondents sales to the United States as it did for Chengen.  Nor did

Commerce request that separate rate respondents provide any information on their

factors of production in order to determine their individual normal values.  Based

on such limited information, it is unreasonable to determine that a company was

dumping during the period of investigation, let alone support the use of a margin

that is partially based on the China-wide rate.

In fact, this methodology was even less comprehensive than the

methodology this Court previously rejected in *Yangzhou Bestpak*.  In *Yangzhou

Bestpak,* this Court rejected Commerce's reliance on a comparison of the average

unit values (AUVs) of sales to the United States reported in the Quantity and Value

Questionnaires for each separate rate respondent.  As this Court found, however,

even these AUVs were not sufficient:

> This court does not find Commerce's late attempt to backfill with
> these AUV estimates, untethered to the three respondents' actual
> dumping margins, as amounting to substantial evidence. Commerce
> only received detailed information from one mandatory respondent:
> Yama. Jintian's estimated AUV, with little connection to its calculated
> dumping margin, is not enough. In other words, Commerce really
> only had one substantiated and calculated basis for dumping margins
> and that information came from Yama. Commerce cannot base a
> determination of economic reality on such slim findings. There must
> be more.

*Yangzhou Bestpak,* 716 F.3d at 1379.  Such an average unit value at least had the

benefit of being based on the total quantity and value of all sales to the United

States during the period of investigation.  In this case, Commerce merely relied on one invoice, reflecting one sale, which is even less sufficient to justify the use of an adverse facts available rate in calculating the margin for separate rate respondents. Commerce also ignored the fact that the evidence from those invoices indicated that numerous separate rate respondents had sales prices that were similar to or greater than Chengen's prices, which under Commerce's methodology would indicate that they are not dumping.  Appx477-478.

### 4. Alleged Difference in Selling Practices Does Not Support Commerce's Application of the 57.36 Percent Rate

Appellants' also point to Commerce's attempt to distinguish Chengen from the separate rate companies based on the claim that, unlike Chengen, some of the separate rate respondents acted as resellers of merchandise produced by unaffiliated companies and, therefore, may have had a different cost structure than Chengen.  United States Brief at 58, Coalition Brief at 32.  However, Commerce made this claim without any supporting facts on the record.  It offered no evidence to support its speculation that any of the separate rate respondents actually had different costs than Chengen or that those differences would lead to a higher, as opposed to an even lower, margin than Chengen's margin.  Ultimately, Commerce itself had to admit that "[t]here are too many possible, unknown variables in the cost structure of a trader/reseller to definitively state the extent of the operational

differences between these 25 separate companies involved in this litigation and Chengen." Appx448. This is not substantial evidence of anything, let alone evidence that it is appropriate to assign separate rate respondents a margin for 57.36 percent, which is partially calculated from an adverse facts available rate.

## 5. Conclusion

This Court has held that "[a]n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible" and the rate determination for non-mandatory, cooperative respondents must "bear some relationship to the actual dumping margins." *Yangzhou Bestpak,* 716 F.3d at 1379-1380 *citing Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). As shown above, Commerce did not meet its burden of demonstrating that the record taken as a whole supported the 57.36 percent rate as bearing any relationship to the actual dumping margin of separate rate respondents. Nor did the Trade Court mandate any outcome in this case. It simply remanded the issue to Commerce and Commerce determined that there was "no other information on the record than the sole calculated margin of zero that we could reasonably apply as the margin for the Separate Rate Plaintiffs." Appx562-563.

Moreover, as the Trade Court reasonably held, Commerce's failure to determine a reasonable margin for separate rate respondents resulted from Commerce's own failures during the investigation. Commerce only selected two

mandatory respondents in the underlying investigation, which resulted in sparse

information on the record to support its assertions regarding the potential dumping

margins of the separate rate respondents. *Linyi Chengen*, 609 F. Supp. 3d at 1403.

This is the same problem that this Court faced in *Yangzhou Bestpak*, a problem

which Commerce still has not corrected. *Yangzhou Bestpak,* 716 F.3d at 1376–79

(*citing* Y*angzhou Bestpak*, 35 C.I.T. at 955 n.4 ("Commerce put itself in a

precarious situation when it selected only two mandatory respondents."). For all of

the reasons argued above, the Court should affirm the Trade Court's decision.

III. **Commerce's Exclusion of Certain Separate Rate Companies from the Order Should be Affirmed**

In its Fifth Remand Redetermination, after applying the zero percent margin

to separate rate companies, Commerce properly excluded two separate rate

respondents, including Zhejiang Dehua, from the order because they had requested

treatment as a voluntary respondent and voluntarily submitted responses to

Commerce's questionnaires. Appx558. This decision was affirmed by the Trade

Court as in accordance with this Court's decisions in *Changzhou Hawd*. *Linyi*

*Chengen,* 658 F. Supp. 3d at 1364 *citing Changzhou Hawd Flooring Co. v. United*

*States*, 947 F.3d 781 (Fed. Cir. 2020).

*Changzhou Hawd* involved virtually the same facts as this case. In that case,

there were voluntary respondent applicants that provided responses to Commerce's

questionnaires that received zero margins in the underlying investigation. The Trade Court concluded that such companies should be excluded from the order and this Court affirmed. This Court found reasonable the Trade Court's decision that such separate rate companies should be excluded from the order on the grounds that "volunteering for investigation offer some reason to think that for those firms, unlike for non-volunteer firms, there is no more need for continuing coverage [of the order] than there is for individually investigated firms found to have a de minimis dumping margin." *Changzhou Hawd*, 947 F.3d at 794.

The Coalition challenges this decision claiming that these exclusions were inadequately explained and supported in this case, but notably fail to address this Court's decision in *Changzhou Hawd*. Coalition Brief at 37. Instead, the Coalition merely cites to another Commerce decision in *Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam*, 86 Fed. Reg. 28,559 (Dep't Commerce May 27, 2021), and accompanying Issues and Decision Mem. at 17-24. However, that decision is not binding on the courts. Moreover, it is not even binding on Commerce, as the case did not reach a final antidumping order and thus was not subject to judicial review. In short, Commerce's decision on this issue is in accordance with current judicial precedent and Commerce is not required to provide any further explanation or support for its decision to exclude the companies at issue from the order.

## IV.  <u>Joinder</u>

Zhejiang Dehua hereby joins in and incorporates by reference the arguments presented in the Response Briefs of the other Plaintiff-Appellees, which were also filed with the U.S. Court of Appeals for the Federal Circuit on this date.

## <u>CONCLUSION</u>

For the reasons discussed above, and the reasons set forth in the response briefs of the other Plaintiffs-Appellees, Zhejiang Dehua respectfully submits that this Court should reject Defendants-Appellants' arguments and affirm the Trade Court's decision.

Respectfully submitted,

/s/ Jeffrey S. Neeley

Jeffrey S. Neeley
Stephen W. Brophy

**Husch Blackwell LLP**
1801 Pennsylvania Ave., NW
Ste 1000
Washington, DC 20006
(202) 378-2409
Email:
Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiff-Appellee*
*Zhejiang Dehua TB Import & Export*
*Co., Ltd..*

Dated:  July 17, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1258, 24-1259

**Short Case Caption:** Linyi Chengen Import and Export Co., Ltd. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes 5557 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/17/2024

Signature: /s/ Jeffrey S. Neeley

Name: Jeffrey S. Neeley

Save for Filing